[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal from the action of the Board of Assessment Appeals of the city of New London ("the city") taken pursuant to General Statutes § 12-117a. In its amended complaint, the plaintiff, Winthrop Plaza Assoc., challenges the assessment on its property for the 1999, 2000 and 2001 grand lists.
The premises at issue in this tax appeal is real estate located at 35 Governor Winthrop Boulevard in New London, in business as the Radisson Hotel. The property was built in 1987 and "is a full-service lodging facility containing 120 rentable units, 4800 square feet of meeting space, a restaurant and lounge, an indoor swimming pool and whirlpool, 150 parking spaces, and appropriate back-of-the-house facilities." (Defendant's Exhibit J, Flanagan appraisal report, p. 41.) The city in the 1999 revaluation set the market value of the premises at $7,026,300, and the same value for 2000. In 2001, the city conducted an interim revaluation of the property and determined the value to be $7,569,000. This appeal followed. CT Page 10726
The basic legal principles that apply in appeals taken pursuant to § 12-117a have been stated in Konover v. West Hartford, 242 Conn. 727,734-36 (1997):
 In a § 12-117a appeal, the trial court performs a two step function. The burden, in the first instance, is upon the plaintiff to show that he has, in fact, been aggrieved by the action of the board in that his property has been overassessed. . . . In this regard, [m]ere overvaluation is sufficient to justify redress under [§ 12-117a], and the court is not limited to a review of whether an assessment has been unreasonable or discriminatory or has resulted in substantial overvaluation. . . . Whether a property has been overvalued for tax assessment purposes is a question of fact for the trier . . . The trier arrives at his own conclusions as to the value of land by weighing the opinion of the appraisers, the claims of the parties in light of all the circumstances in evidence bearing on value, and his own general knowledge of the elements going to establish value including his own view of the property.
 Only after the court determines that the taxpayer has met his burden of proving that the assessor's valuation was excessive and that the refusal of the board of tax review to alter the assessment was improper, however, may the court then proceed to the second step in a § 12-117a appeal and exercise its equitable power to grant such relief as to justice and equity appertains. . . . If a taxpayer is found to be aggrieved by the decision of the board of tax review, the court tries the matter de novo and the ultimate question is the ascertainment of the true and actual value of the applicant's property. . . . If the court finds that the property has been in fact overvalued, it has the power to, and should, correct the valuation.
(Citations omitted; internal quotation marks omitted.)
The court concludes that, with regard to the 1999 and 2000 grand lists, the plaintiff has met its burden to show that the city's valuation was excessive, and the city does not disagree. This conclusion is based upon the opinion of the city's expert appraiser that the real estate value is less than the value set by the assessor. (See Defendant's Exhibit J.) As to the 2001 grand list, the plaintiff's evidence of value and the court's analysis of the experts for the plaintiff and the city show that the plaintiff was subject to an excessive valuation. CT Page 10727
The plaintiff has therefore met its aggrievement burden. "A taxpayer who carries his burden of establishing overvaluation is entitled to plenary judicial relief under § 12-117a." Ireland v. Wethersfield,242 Conn. 550, 559 (1997).
The court must now determine the true and actual value of the premises. With regard to the 1999 and 2000 grand lists, the court selects the income approach to value[1], as do the experts for both the plaintiff and defendant. (See Plaintiff's Exhibit 9, Stone appraisal report, p. 24; Defendant's Exhibit J, p. 58.)
This method requires calculating the net operating income and dividing this sum by a determined "capitalization rate." The court uses the city's figure of $872,000 as the net operating income. (Defendant's Exhibit J, p. 74). The capitalization rate selected[2] is 11% with an addition of 2.3% to reflect tax load. This rate reflects input from both the plaintiff's and defendant's experts. (See Defendant's Exhibit 9, p. 36; Defendant's Exhibit J, pp. 75-6.) The city's appraiser testified that the overall value of the premises using this capitalization rate to be $6.3 million. (Trial Transcript, April 4, 2002, p. 325.)
From the $6.3 figure, the court subtracts $600,000 for personal property (the "FEE"). In making this finding, the court has decided that the FEE before the renovation of 2000-01 was not as valuable as the plaintiff claimed ($900,000) and rejects the city's effort to use the amount submitted on the plaintiff's personal property declaration form ($400,000). This declaration is at most an evidentiary admission and is not controlling in finding value. Tianti v. William Raveis Real Estate,Inc., 231 Conn. 690, 695 (1995). Further, just because some of the FEE in 1999 was not in keeping with the current color schemes does not mean that it has lost its value to the extent claimed by the city.
The court also concludes that the plaintiff is entitled to have a deduction for business value prior to renovation of $400,000. The hotel was a going operation and was not in default or bankrupt. Its problems stemmed from a high mortgage payment and fluctuating room occupancy. It held a liquor and other regulatory licenses, offered its rooms to the public, had employees, and had a positive income flow, when not considering debt service. (Trial Transcript, April 4, 2002, p. 218.) This distinguishes this business from the cases, such as Goodman v.Steinberg, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. FA 96 0713854 (May 27, 1998, Bishop, J.), which the city contends support denial of a business value deduction. The plaintiff's hotel is hardly like the business in Steinberg, that "had no fair market value other than the opportunity it present[ed] for CT Page 10728 employment."
After subtracting the $600,000 and $400,000 figures from $6.3 million, the court concludes that the true real estate value for the premises is $5.3 million dollars for the years 1999 and 2000.
Turning to the 2001 grand list, there is justification for the assessor to revise the value placed on the premises as of 1999, in light of the $2.5 million renovation project of the new owners and the increase in average daily room rate. See 84 Century Limited Partnership v. Board ofTax Review, 207 Conn. 250, 262 (1988) ("The power to equalize the lists, if necessary, imports a watchtower role for the assessor to correct inequalities, whether too high or too low"); Matzul v. Town ofMontville, 70 Conn. App. 442, 447-49 (2002).
The renovations cannot be dismissed, as the plaintiff argues, merely by claiming that "cost does not equal value." As the court stated in LincolnCounty Assessor v. YCP Salishan LP, 15 OTR 354, 360 (2001): "[The plaintiff's appraiser] dismissed the renovations as only `maintaining' the property and adding no value. Intuitively, whether the renovations were replacing `soft goods,' such as worn carpeting and drapes, or making 'solid improvements,' such as installing gas fireplaces in all of the units, it must have added some value. Generally, the market does not invest $8,000,000 unless it expects value in return."
The city's expert testified that the income fluctuations in the years between 1999 and 2001 did not make it possible to find one figure for net operating income to use for the income approach. The stabilized value would be as renovated. (Trial Transcript, April 4, 2002, p. 308.) In addition, the plaintiff's appraiser has in other hotel appraisal projects set forth both an "as is" and "as renovated" figure. (See Defendant's Exhibits G and H.)
To determine the revised value of the 1999 assessment, the court follows the defendant's expert at page 75, Exhibit J. The court modifies the average room rate, as shown on page 75, to $82 from $85 to reflect more accurately what the hotel might generate, and uses the plaintiff's figure of $1,077,480 for the three other income amounts. (Defendant's Exhibit 9, p. 28.) Using the same capitalization rate (11% + 2.3%), and subtracting the full $900,000 for the new FFE, the court concludes that the real estate value after renovation is $6.4 million.
Accordingly, the appeal is sustained. The court finds that the true and actual value of the plaintiff's property is $5.3 million for the 1999 and 2000 grand lists. For the grand list of 2001 the true and actual value is $6.4 million. The plaintiff is entitled to reimbursement for any CT Page 10729 overpayment of taxes based on the grand lists of 1999, 2000, and 2001. Judgment shall enter in favor of the plaintiff, plus interest and costs.
 ______________________ Henry S. Cohn, Judge