FREDERICK A. MATZUL ET AL. *v.* TOWN OF
MONTVILLE ET AL.
(AC 21342)

Lavery, C. J., and Landau and Freedman, Js.

Argued December 12, 2001—officially released June 18, 2002

*Lloyd L. Langhammer*, for the appellants (plaintiffs).

*Ronald F. Ochsner*, for the appellees (defendants).

FREEDMAN, J. This is a municipal tax appeal in which the plaintiffs, Frederick A. Matzul and Charlotte F. Matzul, challenge the right of the assessor of the defendant town of Montville[1] to make an interim change in the assessment of their property. The trial court dismissed the plaintiffs' appeal, and the plaintiffs appealed to this court. We affirm the judgment of the trial court.

The following facts are necessary to our resolution of the plaintiffs' appeal. On October 1, 1996, the plaintiffs were the owners of mobile home parks at 15 Meeting House Lane, Chesterfield Road, 75 Chesterfield Road and 55 Chesterfield Road. On the October 1, 1991 revaluation date, the assessor set the assessment of 15 Meeting House Lane at $45,890. By notice dated February 23, 1996 for the assessment year 1995, the assessor increased the assessment of 15 Meeting House Lane to $129,010. By notice dated February 23, 1996 for the assessment year of 1995, the assessor set an assessment of $23,630 on the property at Chesterfield Road, which had no prior assessment. By notice dated February 23, 1996 for the assessment year of 1995, the assessor set an assessment of $40,740 on the property at 75 Chesterfield Road, which had no prior assessment.[2]

On March 4, 1996, the assessor mailed a notice to all mobile home park owners, including the plaintiffs, explaining that "[a] correction of a clerical error in the land valuation used for mobile home parks has been made." The letter specifically indicated that the February 23, 1996 notice of increase was due to the fact that their properties had previously been incorrectly

---

[1] The other defendant in this appeal is the board of assessment appeals of the town of Montville.

[2] No real estate increase notice was sent regarding 55 Chesterfield Road because the assessed value of that property was reduced from $102,340 to $99,750.

classified as "excess acreage" when in fact they should have been classified as commercial land.

The plaintiffs appealed from the assessment of the properties to the Montville board of assessment appeals, which made no change in the assessments. The plaintiffs then appealed to the court, challenging the assessment of the properties listed on the October 1, 1996 grand list and subsequent grand lists. The plaintiffs subsequently withdrew their appeal only as to 75 Chesterfield Road, and the case proceeded to trial with regard to the remaining properties.

The plaintiffs argued to the court that the assessor lacked the authority to correct the error in the classification of the plaintiffs' property between decennial revaluations. The defendants argued that the assessor's actions were authorized by General Statutes §§ 12-55[3] and 12-60.[4] The court concluded that the assessor properly corrected the misclassification of property once it became known to him. The court, therefore, dismissed the plaintiffs' appeal, and the plaintiffs filed the present appeal.

I

The plaintiffs first argue that the court improperly relied on *84 Century Ltd. Partnership* v. *Board of Tax Review*, 207 Conn. 250, 541 A.2d 478 (1988), as authority

---

[3] General Statutes (Rev. to 1995) § 12-55 (a) provides in relevant part: "When the lists of any town have been so received or made by the assessor or board of assessors, they shall equalize the same, if necessary, and make any assessment omitted by mistake or required by law. The assessor or board of assessors may increase or decrease the valuation of property as named in any of such lists . . . ."

[4] General Statutes (Rev. to 1995) § 12-60 provides in relevant part: "Any clerical omission or mistake in the assessment of taxes may be corrected according to the fact by the assessors or board of tax review, not later than three years following the tax due date relative to which such omission or mistake occurred, and the tax shall be levied and collected according to such corrected assessment. . . ."

for the assessor's actions. The plaintiffs claim that this is especially true in light of subsequent legislative enactments and the Supreme Court decision in *DeSena* v. *Waterbury*, 249 Conn. 63, 731 A.2d 733 (1999). We disagree.

"Before considering the merits of the parties' arguments, we set forth the applicable standard of review. The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . . In this case, the trial court made conclusions of law based upon its interpretation of [our Supreme Court's] precedent. Our review, therefore, is plenary." (Citations omitted; internal quotation marks omitted.) Id., 72–73.

In *84 Century Ltd. Partnership* v. *Board of Tax Review*, supra, 207 Conn. 251, our Supreme Court considered whether a municipal assessor has the power, under § 12-55, to increase a real property assessment between decennial revaluations on the ground that a sale of the property in question demonstrates that the property has greatly increased in value in relation to other properties in the municipality. In holding that a municipal assessor has such power, the court stated: "Section 12-55 contains three operative phrases pertinent to our inquiry: (1) 'When the lists of any town have been so received or made by the assessors, *they shall equalize the same*, if necessary'; (2) '*make any assessment omitted by mistake or required by law*'; and (3) '*the assessors may increase or decrease the valuation of property as named in any such lists or in the last preceding grand list*' . . . . There is no ambiguity in

this broad grant of powers to assessors. It is a clear legislative mandate to grant to local assessors a continuing duty unrelated to decennial revaluations, to achieve administratively a fair and equal assessment for all taxpayers. The power to equalize the lists, if necessary, imports a watchtower role for the assessor to correct inequalities, whether too high or too low. The 'if necessary' language clearly comprehends interim changes in assessments for there is no such requirement in § 12-62 which mandates decennial revaluations. The latter have obviously been legislatively deemed necessary." (Emphasis in original.) Id., 262.

The court further rejected the plaintiff's claim that § 12-55 authorized only changes "omitted by mistake" or "required by law." "Such a restrictive interpretation ignores the plain language of the statute. The fact that these two additional powers are specifically set out does not in any way limit the broad power to equalize assessments provided for earlier in the statute. The most logical interpretation of the effect of these two additional powers is that in addition to the power to equalize assessments the assessors are also empowered to make these specified changes. Assessing property omitted by mistake is a common sense administrative duty having no relation to the 'equalizing' function of the assessors. The same may be said of the added function of making any assessment 'required by law.' If it is required by law, the assessors are required to make it whether or not it is included in this section. Finally, the statute specifically gives to assessors the power to increase or decrease the value of assessed property." Id., 262–63.

"[A]lmost immediately after, and in direct response to, [our Supreme Court's] decision in *84 Century Ltd. Partnership* v. *Board of Tax Review*, [supra, 207 Conn. 263] . . . the legislature enacted No. 88-321 §§ 9 and 10, of the 1988 Public Acts, which became General

Statutes § 12-63d. Section 12-63d provides that '[t]he assessor in any municipality may not, with respect to any parcel of real property in the assessment list for any assessment year, make a change in the assessed value of such parcel, as compared to the immediately preceding assessment list, *solely on the basis of the sale price of such parcel in any sale or transfer of such parcel.'* " (Emphasis added.) *DeSena* v. *Waterbury,* supra, 249 Conn. 84.

According to the plaintiffs, the enactment of § 12-63d supports their position that the legislature sought to restrict the power of the assessor as stated by the court in *84 Century Ltd. Partnership* v. *Board of Tax Review,* supra, 207 Conn. 263. The plaintiffs contend that the trial court failed to recognize that restriction. We conclude, however, that the legislature, in enacting § 12-63d, only restricted an assessor's authority to make a change in assessment "solely on the basis of the sale price of such parcel in any sale or transfer of such parcel." *DeSena* v. *Waterbury,* supra, 249 Conn. 84. The watchtower role of the assessor, as recognized by the court in *84 Century Ltd. Partnership* v. *Board of Tax Review,* supra, 207 Conn. 262, remained unchanged by the legislative enactment. That conclusion is supported by our Supreme Court's decision in *DeSena* v. *Waterbury,* supra, 84.

In *DeSena,* the court considered whether § 12-55 "which authorizes an assessor to equalize tax lists by making interim adjustments in assessments, likewise affords the taxpayer a vehicle by which to compel such interim adjustments." Id., 87–88. The court first "note[d] that the plain language of the statute confers upon assessors the broad power to equalize tax lists, 'if necessary.' " Id., 88. In concluding that the statute may not be used as a vehicle to compel interim revaluations, the court further stated: "[I]n *84 Century Ltd. Partnership* v. *Board of Tax Review,* supra, 207 Conn. 251, this

court held that § 12-55 *permits* assessors to conduct interim revaluations. All of this court's discussions of the statute, both prior and subsequent to the decision in that case, support the proposition that § 12-55 is permissive rather than mandatory in nature. This proposition is supported by the plain language of the statute as well as the revaluation scheme as set forth in the statutes. Neither the arguments advanced by the defendant nor the opinion of the trial court contains persuasive reasoning compelling us to conclude otherwise. We conclude, therefore, that although § 12-55 permits assessors to conduct interim revaluations of property, it cannot be used to compel such revaluations." (Emphasis in original.) Id., 91. Thus, the court reaffirmed the principle that § 12-55 permits an assessor to conduct an interim revaluation. See also *United Illuminating Co.* v. *New Haven,* 240 Conn. 422, 434–35, 692 A.2d 742 (1997).

We conclude, therefore, that the court properly found that the assessor had the authority, pursuant to § 12-55, to make the interim change in the assessment of the plaintiffs' property.[5]

## II

The plaintiffs next claim that the court improperly found that the assessor was operating in his "watchtower role," pursuant to § 12-55, when in fact he was operating pursuant to § 12-60, which allows for the correction of "[a]ny clerical omission or mistake in the assessment of taxes . . . ." The plaintiffs further claim that because § 12-60 does not permit the change as made by the assessor, the court's ruling cannot stand. We disagree.

---

[5] In light of that conclusion, it is unnecessary for us to consider the plaintiffs' additional but related claim that the court's decision gives the assessor "unbridled authority" to equalize the assessor's list.

The following facts are necessary to our resolution of the plaintiffs' claim. By letter dated March 4, 1996, the assessor explained to all mobile home park owners, including the plaintiffs, the February 23, 1996 increase notice. That letter states that "[a] correction of a clerical error in the land valuation used for mobile home parks has been made." The plaintiffs argue that the assessor's use of the phrase "clerical error" implies that the assessor was acting pursuant only to § 12-60. The defendants counter that the only authority cited by the assessor was § 12-55 and that the assessor's use of the phrase "clerical error" does not transform his actions into a correction pursuant to § 12-60. We agree with the defendants.

The notice of increase dated February 23, 1996 stated in relevant part: "Pursuant to the provision of Sec. 12-55 of the General Statutes of the State of Conn., you are hereby notified that the Assessor has assessed your property in the tax records." The notice then reflected the change in assessment. The letter of explanation dated March 4, 1996, although indicating that a clerical error had been corrected, makes clear that the correction involved changing the classification of the plaintiffs' property from excess acreage to commercial land.[6] Both parties appear to agree that this correction involved a matter of substance as opposed to the correction of a clerical error, which is permitted by § 12-60. See *Reconstruction Finance Corp.* v. *Naugatuck*, 136

---

[6] The letter states in relevant part: "This letter is to explain the enclosed increase notice. A correction of a clerical error in the land valuation used for mobile home parks has been made. As an owner of a mobile home park I am sure that you are aware that your land has been valued as excess acreage and not commercial land. The value of land used as mobile home sites rests in its ability to generate an income and therefore must be valued as commercial land. The valuation method which calculates value from an income stream is called the capitalization method. Additional land in excess of 10,000 square feet per mobile home site will still be valued as excess acreage. The correction is only for the mobile home sites."

Conn. 29, 32, 68 A.2d 161 (1949) (change made by assessors not correction of clerical error pursuant to precursor of § 12-60 because change involved substance of assessment). Because the assessor referred in the March 4, 1996 letter to a "clerical error," the issue is whether the court improperly concluded that the assessor was acting in his watchtower role under § 12-55. We conclude that the court's holding that the assessor acted properly pursuant to § 12-55 was proper.

We held in part I that the court's reliance on *84 Century Ltd. Partnership* v. *Rocky* Hill, supra, 207 Conn. 250, was correct. That opinion specifically states that the assessor's broad powers pursuant to § 12-55 are not restricted to changes "omitted by mistake" or "required by law." Rather, "[t]he power to equalize the lists, if necessary, imports a watchtower role for the assessor to correct inequalities, whether too high or too low." Id., 262. Thus, in the present case, notwithstanding the reference to a clerical error, the assessor retained the broad power under § 12-55 to equalize the assessments. To accept the plaintiffs' argument that the erroneous classification of their property could not be corrected until the next decennial revaluation would have been inequitable to all other correctly classified and valued commercial properties. We agree with the court that the assessor not only had the right to make the correction but also the obligation, as an assessor, once the misclassification became known to him.

The judgment is affirmed.

In this opinion the other judges concurred.