CARMEL HOLLOW ASSOCIATES LIMITED
PARTNERSHIP *v.* TOWN
OF BETHLEHEM
(SC 16957)

Sullivan, C. J., and Borden, Norcott, Zarella and Parker, Js.

Argued December 5, 2003—officially released May 25, 2004

*Michael A. Zizka*, for the appellant (defendant).

*David R. Schaefer*, with whom, on the brief, was *Carolyn W. Kone*, for the appellee (plaintiff).

*Opinion*

ZARELLA, J. In this tax appeal,[1] the principal issue is whether the trial court properly concluded that a town assessor may not deny an application to classify as forest land subdivided land that the state forester has designated as forest land pursuant to General Statutes § 12-107d[2] solely on the basis of the assessor's

---

[1] Although the plaintiff's appeal is from the denial of its application for the classification of property as forest land, the underlying claim is that the plaintiff's property wrongfully was assessed according to its highest and best use and, accordingly, that the resulting valuation was manifestly excessive.

[2] General Statutes § 12-107d provides in relevant part: "(a) An owner of land may file a written application with the State Forester for its designation by the State Forester as forest land. When such application has been made, the State Forester shall examine such application and, if the State Forester determines that it is forest land, said forester shall issue a triplicate certificate designating it as such, and file one copy of such certificate in the State Forester's office, furnish one to the owner of the land and file one in the office of the assessor of the municipality in which the land is located.

"(b) When the State Forester finds that it is no longer forest land, the State Forester shall issue a triplicate certificate cancelling the designation of such land as forest land, and file one copy of such certificate in the State Forester's office, furnish one to the owner of the land and file one in the office of such assessor.

"(c) An owner of land designated as forest land by the State Forester may apply for its classification as forest land on any grand list of a municipality by filing a written application for such classification with the assessor thereof not earlier than thirty days before or later than thirty days after the assessment date and, if the State Forester has not cancelled the designation of such land as forest land as of a date at or prior to the assessment date such assessor shall classify such land as forest land and include it as such on the grand list . . . .

"(d) An application to the State Forester for designation of land as forest land shall be made upon a form prescribed by the State Forester and

determination that the use of the land has changed. The plaintiff, Carmel Hollow Associates Limited Partnership, filed an appeal in the Superior Court pursuant to General Statutes §§ 12-117a[3] and

approved by the Commissioner of Environmental Protection and shall set forth a description of the land and such other information as the State Forester may require to aid in determining whether such land qualifies for such designation. An application to an assessor for classification of land as forest land shall be made upon a form prescribed by such assessor and approved by the Commissioner of Environmental Protection and shall set forth a description of the land and the date of the issuance by the State Forester of the certificate designating it as forest land and a statement of the potential liability for tax under the provisions of sections 12-504a to 12-504e, inclusive.

* * *

"(f) The municipality within which land designated as forest land by the State Forester is situated or the owner of land which the State Forester has refused to designate as such may appeal from the decision of the State Forester to the superior court for the judicial district within which such municipality is situated. . . . The Superior Court shall have the same powers with respect to such appeals as are provided in the general statutes with respect to appeals from boards of assessment appeals.

"(g) An owner of land aggrieved by the denial of any application to the assessor of a municipality for classification of land as forest land shall have the same rights and remedies for appeal and relief as are provided in the general statutes for taxpayers claiming to be aggrieved by the doings of assessors or boards of assessment appeals."

Although the legislature made technical amendments to § 12-107d in 2000 and 2001; see Public Acts 2001, No. 01-195, § 117; Public Acts 2000, No. 00-120, § 3; after the town board of assessors had denied the plaintiff's application to classify certain land as forest land pursuant to § 12-107d, those amendments have no bearing on the merits of this appeal. We therefore refer to the current revision of § 12-107d throughout this opinion.

[3] General Statutes § 12-117a provides in relevant part: "Any person . . . claiming to be aggrieved by the action of the board of tax review or the board of assessment appeals, as the case may be, in any town or city may, within two months from the date of the mailing of notice of such action, make application, in the nature of an appeal therefrom, with respect to the assessment list . . . to the superior court for the judicial district in which such town or city is situated, which shall be accompanied by a citation to such town or city to appear before said court. . . . Any such application shall be a preferred case, to be heard, unless good cause appears to the contrary, at the first session, by the court or by a committee appointed by the court. . . . The court shall have power to grant such relief as to justice and equity appertains, upon such terms and in such manner and form as

12-119[4] from the decision of the board of assessment appeals of the defendant town of Bethlehem denying the plaintiff's appeal from the decision of the board of assessors (assessor) to deny the plaintiff's application for forest land and farm land classification so as to reduce the assessment of its property. Following a hearing, the trial court found for the defendant as to the farm land classification and for the plaintiff as to the forest land classification. The court ordered a reduction in the assessment of the property for which the forest land classification had been sought and a refund to the plaintiff of any overpayment of taxes, with interest and costs, with respect to that property. The defendant appealed to the Appellate Court from that portion of the trial court's judgment that was rendered in favor

appear equitable, and, if the application appears to have been made without probable cause, may tax double or triple costs, as the case appears to demand; and, upon all such applications, costs may be taxed at the discretion of the court. If the assessment made by the board of tax review or board of assessment appeals, as the case may be, is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes, together with interest and any costs awarded by the court, or, at the applicant's option, shall be granted a tax credit for such overpayment, interest and any costs awarded by the court. Upon motion, said court shall, in event of such overpayment, enter judgment in favor of such applicant and against such city or town for the whole amount of such overpayment, together with interest and any costs awarded by the court. The amount to which the assessment is so reduced shall be the assessed value of such property on the grand lists for succeeding years until the tax assessor finds that the value of the applicant's property has increased or decreased."

[4] General Statutes § 12-119 provides in relevant part: "When it is claimed that . . . a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof . . . prior to the payment of such tax, may, in addition to the other remedies provided by law, make application for relief to the superior court for the judicial district in which such town or city is situated. . . . In all such actions, the Superior Court shall have power to grant such relief upon such terms and in such manner and form as to justice and equity appertains, and costs may be taxed at the discretion of the court. If such assessment is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes in accordance with the judgment of said court."

of the plaintiff, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. We affirm the judgment of the trial court.

The parties have stipulated to the following facts. In 1986, the town planning commission approved subdivision plans filed by the plaintiff for fourteen[5] building lots on approximately 91.5 acres of land and approximately 13.6 acres of open space. In 1988, the planning commission approved subdivision plans filed by the plaintiff for seven building lots on approximately 39.7 acres of land and approximately 5.9 acres of open space. The two subdivisions are adjacent to each other and are known as Carmel Hollow I and Carmel Hollow II, respectively.[6]

On October 18, 1990, the state forester[7] approved the plaintiff's application for the designation of approximately 106.2 acres within Carmel Hollow I and Carmel Hollow II as forest land pursuant to § 12-107d (a). The record reveals that the defendant did not appeal from the state forester's decision to designate the property as forest land as it was permitted to do under § 12-107d (f). Shortly thereafter, the assessor approved the plaintiff's application for the classification of approximately twenty-five acres of Carmel Hollow I as farm land pursuant to General Statutes § 12-107c (a).[8] As a

---

[5] On October 3, 2001, one of the lots was resubdivided into two lots.

[6] The subdivisions originally were known as Starwood I and Starwood II.

[7] The state forester is an employee of the state department of environmental protection and reports to the commissioner thereof. See General Statutes § 23-19.

[8] General Statutes § 12-107c (a) provides in relevant part: "An owner of land may apply for its classification as farm land on any grand list of a municipality by filing a written application for such classification with the assessor thereof not earlier than thirty days before or later than thirty days after the assessment date . . . . The assessor shall determine whether such land is farm land and, if such assessor determines that it is farm land, he or she shall classify and include it as such on the grand list. In determining whether such land is farm land, such assessor shall take into account, among other things, the acreage of such land, the portion thereof in actual use for

result, all of the land within the two subdivisions was classified as either forest land or farm land on the defendant's 1990 grand list.[9]

The plaintiff sold lots in the two subdivisions in 1994, 1997 and each subsequent year until 2002. At the time of trial in July, 2002, the plaintiff continued to own four lots in Carmel Hollow I and six lots in Carmel Hollow II.[10] All of the lots that the plaintiff still owned remained in a natural state and unchanged in actual use from their use in 1990.

In August, 1998, the assessor sent a letter to all of the owners of land classified as farm land or forest land pursuant to §§ 12-107c and 12-107d, respectively. The letter stated that the assessor was in the process of conducting a revaluation of property throughout the town and that the owners of property previously classified as farm land or forest land must complete a new application, as "an informational update only," indicat-

farming or agricultural operations, the productivity of such land, the gross income derived therefrom, the nature and value of the equipment used in connection therewith, and the extent to which the tracts comprising such land are contiguous."

Although the legislature made technical amendments to § 12-107c (a) in 2000 and 2001; see Public Acts 2001, No. 01-195, § 116; Public Acts 2000, No. 00-120, § 2; after the assessor had denied the plaintiff's application to classify certain land as farm land pursuant to § 12-107c (a), those amendments have no bearing on the merits of this appeal. We therefore refer to the current revision of § 12-107c throughout this opinion.

[9] Although the parties' stipulation of facts contains the conclusory statement that all of the land in the two subdivisions was classified as forest land or farm land, neither the stipulation nor the trial court's memorandum of decision expressly states that the plaintiff applied to the assessor for the classification of property previously designated as forest land by the state forester. The record nonetheless reveals that the plaintiff applied for, and the assessor approved, the classification of 106.2 acres in the two subdivisions as forest land on the basis of the state forester's designation.

[10] The trial court's memorandum of decision states that fifteen lots were the subject of the plaintiff's tax appeal. That number represents the number of lots owned by the plaintiff at the time of the assessment for the defendant's 1999 grand list.

ing the current status of the classified property. The letter also requested that the owners complete a brief questionnaire indicating whether they had subdivided or sold any such property subsequent to its classification. Thereafter, the plaintiff completed the questionnaire and the application and returned them to the assessor.

In January, 1999, the assessor sent a second letter to the owners describing a new policy with respect to property classified as farm land or forest land within a subdivision. Under that policy, subdivided land on which no lot had been sold would be considered an inactive subdivision and would continue to be classified as farm land or forest land. Correspondingly, subdivided land on which lots had been sold would be considered an active subdivision and would be eligible for farm land or forest land classification subject to certain conditions.[11]

The plaintiff applied to continue the classification of its unsold lots on the 1999 grand list as farm land or forest land. The assessor denied the plaintiff's application, and the unsold lots were assessed on the basis of their highest and best use as of October, 1999,[12] despite the fact that the state forester had not cancelled its designation of those lots or portions thereof as forest land. The record does not indicate that the defendant ever sought, or that the plaintiff paid, a conveyance tax because of the purported change in use of the property at the time the assessor denied the plaintiff's application to continue the classification. The plaintiff appealed to

[11] The letter explained that active subdivisions would be eligible for forest land classification only if the individual lots "meet the statutory requirements for acreage." Farm land classification would be extended to the "excess acreage portion of any lot that is used for agricultural purposes and [for which] the required applications [have been] filed."

[12] The assessments were effective in 1999 and applied to subsequent grand lists.

the board of assessment appeals from the assessor's decision to deny the plaintiff's application. The board of assessment appeals denied the appeal. The plaintiff then appealed to the Superior Court pursuant to §§ 12-117a and 12-119.

The trial court sustained the plaintiff's appeal as to the forest land classification, but dismissed the appeal as to the farm land classification.[13] With respect to the property classified as forest land, the trial court determined that, under the "clear language" of § 12-107d (c), "unless the [state] forester has cancelled the designation of forest land, the assessor 'shall' classify the land as such. There is nothing . . . to suggest that the state forester cancelled the forest land designation as to any of the property owned by the plaintiff on October 1, 1999." Consequently, the trial court concluded that the "actions [of the assessor] in declassifying the forest land and computing an assessment based on that declassification resulted in an excessive assessment and disregarded the statutory provision for determining valuation, specifically, § 12-107d." The court thus ordered the defendant to classify all of the property still owned by the plaintiff in Carmel Hollow II and 34.34 acres of the remaining property in Carmel Hollow I as forest land for purposes of the particular assessments under appeal[14] and to assess the property accordingly. This appeal by the defendant followed.

I

The defendant argues that the trial court improperly sustained the plaintiff's appeal with respect to the continued classification of the unsold lots as forest land because the assessor was entitled to terminate the clas-

---

[13] The plaintiff did not appeal from that part of the trial court's judgment rendered in favor of the defendant as to the farm land classification.

[14] The plaintiff sought a reduction in the assessments for tax years 1999, 2000 and 2001.

sification pursuant to General Statutes § 12-504h[15] without seeking prior approval from the state forester. We disagree.

Because this issue raises a question of statutory interpretation, our review is plenary. E.g., *Fort Trumbull Conservancy, LLC* v. *Planning & Zoning Commission*, 266 Conn. 338, 345, 832 A.2d 611 (2003). "A fundamental tenet of statutory construction is that statutes are to be considered to give effect to the apparent intention of the lawmaking body." (Internal quotation marks omitted.) *Winchester Woods Associates* v. *Planning & Zoning Commission*, 219 Conn. 303, 309, 592 A.2d 953 (1991). "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."[16] Public Acts 2003, No. 03-154, § 1. In

[15] General Statutes § 12-504h provides in relevant part: "Any land which has been classified by the record owner as . . . forest land pursuant to section 12-107d . . . shall remain so classified without the filing of any new application subsequent to such classification, notwithstanding the provisions of said [section] . . . until either of the following shall occur: (1) The use of such land is changed to a use other than that described in the application for the existing classification by said record owner, or (2) such land is sold by said record owner."

[16] The concurrence suggests that Public Acts 2003, No. 03-154, § 1 (P.A. 03-154), does not govern the issue of statutory interpretation presented in this case. I disagree. The principles embodied in P.A. 03-154 are applicable in *all* cases of statutory interpretation, but the act provides for differing approaches to ascertaining the meaning of any given statute depending on the clarity of the statutory scheme of which it is a part. When the meaning of a statute initially may be determined from the text of the statute and its relationship to other statutes, the act clearly provides that extratextual evidence of the meaning of the statute shall not be considered. Public Acts 2003, No. 03-154, § 1. When the meaning of a provision cannot be gleaned from examining the text of the statute and other related statutes without yielding an absurd or unworkable result, extratextual evidence may be consulted. See id. Thus, in every case of statutory interpretation, P.A. 03-154 requires a threshold determination as to whether the provision under

the present case, the defendant relies on § 12-504h, a provision contained in the real estate conveyance tax scheme. See General Statutes § 12-494 et seq. The provisions that govern our resolution of the issue, however, are contained in the property tax assessment scheme, specifically, General Statutes §§ 12-107a through 12-107e, which pertain to the assessment and classification of property as farm land, forest land and open space land. It is clear from the plain and unambiguous language of the relevant statutory provisions and from the statutory scheme itself that the assessor was not empowered to deny the application of the plaintiff to continue the classification of its property as forest land without the cancellation of the forest land designation. Accordingly, the defendant's claim has no merit.

The statutory scheme relating to the designation and classification of forest land for tax assessment purposes is contained in chapter 203 of the General Statutes, entitled "Property Tax Assessment," and begins with a declaration of policy that encourages conservation of the state's natural resources when threatened by local development pressures. General Statutes § 12-107a provides in relevant part: "It is hereby declared (a) that it is in the public interest to encourage the preservation of farm land, forest land and open space land in order to maintain a readily available source of food and farm products . . . to conserve the state's natural resources and to provide for the welfare and happiness of the inhabitants of the state, (b) that it is in the public interest to prevent the forced conversion of farm land, forest land and open space land to more intensive uses as the result of economic pressures caused by the assessment thereof for purposes of property taxation at values incompatible with their preservation as such farm land, forest land and open space land, and (c) that the neces-

consideration is plain and unambiguous. This threshold determination then governs whether extratextual sources can be used as an interpretive tool.

sity in the public interest of the enactment of the provisions of sections 12-107b to 12-107e, inclusive, is a matter of legislative determination." Thus, the purpose of §§ 12-107a through 12-107e is to encourage the preservation of property designated as farm land, forest land or open space land "by ensuring against the conversion of such land to more intensive uses as the result of higher property tax assessments." *Rustici* v. *Stonington*, 174 Conn. 10, 13, 381 A.2d 532 (1977).

General Statutes § 12-107b (b) assigns the state forester a central role in implementing the portion of the statutory scheme regarding the conservation of forest land by defining forest land as "any tract or tracts of land . . . bearing tree growth in such quantity and so spaced as to constitute *in the opinion of the State Forester* a forest area and maintained *in the opinion of the State Forester* in a state of proper forest condition . . . ." (Emphasis added.) General Statutes § 12-107d (a) further underscores the state forester's significant role in the conservation of forest land by providing in relevant part: *"An owner of land may file a written application with the State Forester for its designation by the State Forester as forest land.* When such application has been made, the State Forester shall examine such application and, *if the State Forester determines that it is forest land, said forester shall issue a triplicate certificate designating it as such,* and file one copy of such certificate in the State Forester's office, furnish one to the owner of the land and file one in the office of the assessor of the municipality in which the land is located." (Emphasis added.)

Thereafter, if the landowner so elects, designated land may be classified[17] as forest land on the grand list

[17] The terms "designation" and "classification," as used in the statutory scheme, refer to specific actions of the state forester and town assessors, respectively. The "designation" of property as forest land requires the property owner to file a written application seeking the designation and a determination by the state forester that the property is so qualified. The

of a municipality pursuant to General Statutes § 12-107d (c), which provides in relevant part: "An owner of land designated as forest land by the State Forester may apply for its classification as forest land on any grand list of a municipality by filing a written application for such classification with the assessor thereof . . . and, *if the State Forester has not cancelled the designation of such land as forest land . . . such assessor shall classify such land as forest land* and include it as such on the grand list . . . ." (Emphasis added.) Subsection (c) of General Statutes § 12-107d thus underscores the state forester's preeminent role, not only in the designation of property as forest land, but also in the classification of property as forest land, by plainly stating that the town assessor "*shall*" grant an application for the classification of property as forest land if the property has been so designated by the state forester. (Emphasis added.) Subsection (d) of General Statutes § 12-107d reaffirms the state forester's preeminent role by providing in relevant part: "An application to an assessor for classification of land as forest land . . . shall set forth a description of the land and the date of the issuance by the State Forester of the certificate designating it as forest land . . . ."

With respect to the cancellation of the forest land designation, General Statutes § 12-107d (b) provides: "*When the State Forester finds that it is no longer forest land, the State Forester shall issue a triplicate certificate cancelling the designation of such land as forest land,* and file one copy of such certificate in the State Forester's office, furnish one to the owner of the land and file one in the office of such assessor." (Emphasis added.)

"classification" of designated property as forest land on the grand list of a municipality requires the property owner to file an application with the town assessor to obtain the preferential tax treatment afforded to such classified property. See generally General Statutes § 12-107d.

The statutory scheme is silent regarding the role of an assessor in the declassification of property that the state forester has designated as forest land. The fact that the relevant statutory provisions are silent, however, does not mean that they are ambiguous. It is well established that, "[i]n construing a statute, common sense must be used and courts must assume that a reasonable and rational result was intended." (Internal quotation marks omitted.) *Modern Cigarette, Inc.* v. *Orange,* 256 Conn. 105, 120, 774 A.2d 969 (2001). The statutory scheme clearly provides that the classification of property as forest land is dependent upon its designation as forest land. The statutory scheme also establishes a procedure to cancel the designation. As we previously explained, this procedure requires that the state forester reexamine the status of the property to determine whether the property continues to warrant the forest land designation. See General Statutes § 12-107d (b). Unless the state forester receives notice that the use of the property has changed, there is no reason for the state forester to cancel the designation. Cf. *Timber Trails Associates* v. *New Fairfield,* 226 Conn. 407, 409, 627 A.2d 932 (1993) (state forester issued to plaintiff certificate continuing designation of property as forest land upon notification that owner of record had changed). The statutory language thus suggests that the state forester must be notified of a possible change in use that would trigger the cancellation procedure.[18]

---

[18] The plaintiff argues that the language of § 12-107d (b), prior to its amendment in 1974, supports the conclusion that the state forester has sole authority to determine if property should remain designated as forest land. Subsection (b) of § 12-107d originally provided: *"When requested to do so by such assessor or whenever he deems it necessary,* the state forester shall reexamine land designated by him as forest land and, if he finds that it is no longer forest land, he shall issue a triplicate certificate cancelling his designation of such land as forest land . . . ." (Emphasis added.) General Statutes (Rev. to 1972) § 12-107d (b). We need not resort to legislative history in construing the statute, however, because the statutory scheme is clear as to the respective roles of the state forester and the town assessor regarding the designation and classification of property as forest land.

Accordingly, in light of the fact that General Statutes § 12-107d (c) provides that an assessor "*shall*" approve an application for the classification of property as forest land if the property has been so designated, and because there is no other provision that gives an assessor discretionary authority to deny such an application, the only reasonable construction of the statutory scheme is that an assessor who believes that the use of the land has changed must request a reexamination of the forest land designation pursuant to § 12-107d (b). (Emphasis added.) Thereafter, if the state forester cancels the forest land designation because the property no longer qualifies, the assessor may deny the owner's application to classify the property as forest land. If the state forester does not cancel the forest land designation, the assessor must continue to classify the property as forest land pursuant to § 12-107d (c). The statutory scheme does not, and need not, specifically identify all of those officials, including the town assessor, *who may not declassify property as forest land,* because the statutory scheme affirmatively provides that the state forester is the only government official authorized to designate property as forest land and that property so designated "*shall*" be classified as forest land by the town assessor.[19] (Emphasis added.) General Statutes § 12-107d (c); see *Timber Trails Associates* v. *New Fairfield,* supra, 226 Conn. 417–18.

To interpret the statutory scheme as permitting an assessor to deny an application for the continued classification of property designated as forest land would be in direct conflict with § 12-107d (c). Furthermore, it would defy common sense to grant discretionary

[19] The concurrence suggests that the statute's silence on this issue necessarily renders the meaning of the statute ambiguous. We disagree. If that were true, the fact that the town librarian is not mentioned also would mean that the statute is ambiguous. The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation.

authority to assessors to deny such applications because assessors may be motivated by local financial considerations that are at odds with the underlying purpose of the statutory scheme to conserve the state's natural resources.

Such an interpretation also would render meaningless § 12-107d (b). "It is a basic tenet of statutory construction that the legislature did not intend to enact meaningless provisions. . . . [S]tatutes must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant . . . ." (Internal quotation marks omitted.) *Segal* v. *Segal*, 264 Conn. 498, 507, 823 A.2d 1208 (2003). If the legislature had intended to permit assessors to deny applications for the continued classification of property designated as forest land, there would have been no need to enact § 12-107d (b), which permits the state forester to cancel the forest land designation, because the effect in both situations is to preclude landowners from receiving the preferential tax treatment for which the forest land designation is sought.

Furthermore, if the legislature had wanted to grant a municipality or town assessors discretionary authority with respect to the classification of property as forest land it could have done so, as it did with the classification of property as farm land and open space land in General Statutes §§ 12-107c[20] and 12-

---

[20] See footnote 8 of this opinion. General Statutes § 12-107c provides in relevant part: "(a) An owner of land may apply for its classification as farm land on any grand list of a municipality by filing a written application for such classification with the assessor thereof . . . . *The assessor shall determine whether such land is farm land and, if such assessor determines that it is farm land, he or she shall classify and include it as such on the grand list.* . . .

\* \* \*

"(d) Any person aggrieved by the denial of any application for the classification of land as farm land shall have the same rights and remedies for appeal and relief as are provided in the general statutes for taxpayers claiming to be aggrieved by the doings of assessors or boards of assessment appeals." (Emphasis added.)

107e,[21] respectively. Those statutory provisions, unlike the statutory provision pertaining to forest land, grant to the town assessor and the municipality, respectively, discretion to classify land as farm land and open space land upon the application of the landowner. The provision relating to forest land also is distinguishable from the provisions regarding farm land and open space land in that an appeal can be taken directly to the Superior Court from the state forester's decision regarding the designation of property as forest land; see General Statutes § 12-107d (f); but there are no corresponding provisions for direct appeals to the Superior Court from the decisions of local officials regarding the classification of property as farm land or open space land. See General Statutes § 12-107c (d) (contemplating appeal from town

[21] General Statutes § 12-107e provides in relevant part: "(a) *The planning commission of any municipality in preparing a plan of development for such municipality may designate upon such plan areas which it recommends for preservation as areas of open space land, provided such designation is approved by a majority vote of the legislative body of such municipality.* Land included in any area so designated upon such plan as finally adopted may be classified as open space land for purposes of property taxation or payments in lieu thereof if there has been no change in the use of such area which has adversely affected its essential character as an area of open space land between the date of the adoption of such plan and the date of such classification.

"(b) An owner of land included in any area designated as open space land upon any plan as finally adopted may apply for its classification as open space land on any grand list of a municipality by filing a written application for such classification with the assessor thereof . . . . *The assessor shall determine whether there has been any change in the area designated as an area of open space land upon the plan of development which adversely affects its essential character as an area of open space land and, if the assessor determines that there has been no such change, said assessor shall classify such land as open space land and include it as such on the grand list. . . .*

\* \* \*

"(d) Any person aggrieved by the denial by an assessor of any application for the classification of land as open space land shall have the same rights and remedies for appeal and relief as are provided in the general statutes for taxpayers claiming to be aggrieved by the doings of assessors or boards of assessment appeals." (Emphasis added.)

assessor's denial of application for classification of property as farm land to board of assessment appeals and subsequent appeal from board's decision to Superior Court pursuant to General Statutes § 12-117a); General Statutes § 12-107e (d) (same with respect to municipality's denial of application for classification of property as open space land). The fact that the state forester's actions are not reviewable by local authorities underscores the state forester's crucial role in protecting forest land. Accordingly, we conclude that an assessor may not deny an application to continue the forest land classification unless the state forester has cancelled the forest land designation. This conclusion is consistent with the public policy underlying the statutory scheme and with other statutes regarding the valuation and assessment of forest land.

Section 12-107a, the declaration of policy, expressly recognizes the incompatibility of conserving forest land and the power of municipalities to increase the valuation of property for the purpose of increasing tax revenues. The statutory scheme addresses this problem by (1) declaring the conservation of forest land a public necessity, (2) delegating to the state forester, as opposed to local officials, the authority to designate and to cancel the designation of property as forest land, and (3) *requiring* assessors to classify designated land as forest land upon application by the property owner. See General Statutes §§ 12-107a and 12-107d. The balance between the two competing interests would be upset if assessors had the authority to deny applications for the classification of forest land because of a perceived change in use. Accordingly, public policy considerations are consistent with our conclusion that the assessor improperly denied the application of the plaintiff to continue the classification of its property as forest land following the assessor's independent determination that the use of the property had changed.

Our conclusion is in accord with other statutes governing the classification of property as forest land. See, e.g., *Cardenas* v. *Mixcus*, 264 Conn. 314, 326, 823 A.2d 321 (2003) ("[i]n cases in which more than one [statutory provision] is involved, we presume that the legislature intended [those provisions] to be read together to create a harmonious body of law" [internal quotation marks omitted]). General Statutes § 12-96 permits owners of woodland areas or land suitable for tree plantations to apply to the state forester for classification of such property as forest land if the value of the property is less than $100 per acre. General Statutes § 12-99 of the statutory scheme discusses the grounds for the cancellation of the forest land classification and provides in relevant part: "When any tract has been classified as forest land for purposes of taxation . . . the classification shall be continued as long as proper forest conditions are maintained thereon except as herein provided. . . . [A]ny changed condition which, in the opinion of the State Forester, indicates that the requirements of [the classification] are not being fulfilled, shall be sufficient ground for cancellation of such classification. *When requested to do so by the assessors, or whenever he deems it necessary, the State Forester shall examine classified forest land and, if he finds the provisions of said sections are not complied with, he shall forthwith cancel the classification of such land,* sending notice of such cancellation to the Secretary of the Office of Policy and Management, the assessor of the town in which the land is located and the owner of such land. Such land shall thereafter be taxed as other land. . . ." (Emphasis added.) Section 12-99 thus makes clear that an assessor or the state forester may initiate a proceeding to reexamine property classified as forest land if there is reason to believe that the property no longer qualifies, but that the authority to cancel the classification lies solely with the state forester.

We recognize that the forest planting statutes[22] are distinguishable from the forest conservation statute[23] in certain procedural respects. The forest planting statutes provide for a one step process that requires the state forester's approval of the forest land classification, whereas the forest land conservation statute sets forth a two step process that begins with the state forester's designation of property as forest land and ends with the mandatory classification of the property as forest land upon the owner's submission of an application to the town assessor. The statutory schemes are similar, however, in that both vest the state forester with ultimate authority to determine whether the land in any given case qualifies as forest land for tax assessment purposes. Thus, the forest planting statutory scheme is consistent with our interpretation of § 12-107d, which requires action by the state forester before an assessor may classify property as forest land, by reaffirming the key role of the state forester in preserving forest land.

Nevertheless, the defendant argues that the assessor properly denied the plaintiff's application pursuant to § 12-504h, without first seeking the state forester's approval, because that statute does not expressly require that the state forester determine whether the use of the land has changed or whether the land has been sold, either of which may warrant the termination of the forest land classification. We are not persuaded that § 12-504h overcomes the plain language of the statutory scheme regarding the assessment of property for tax assessment purposes.

"We are constrained to read a statute as written . . . and we may not read into clearly expressed legislation provisions which do not find expression in its words . . . ." (Citations omitted; internal quotation marks

---

[22] General Statutes §§ 12-96 through 12-103.
[23] General Statutes § 12-107d.

omitted.) *Giaimo* v. *New Haven*, 257 Conn. 481, 494, 778 A.2d 33 (2001). The defendant's interpretation finds no support in the plain language of § 12-504h or in the case law of our state.

General Statutes § 12-504h is contained in chapter 223 of the General Statutes, entitled "Real Estate Conveyance Tax,"[24] and provides: "Any land which has been classified by the record owner as farm land pursuant to section 12-107c, as forest land pursuant to section 12-107d, or as open space land pursuant to section 12-107e shall remain so classified without the filing of any new application subsequent to such classification, notwithstanding the provisions of said sections 12-107c, 12-107d and 12-107e, until either of the following shall occur: (1) The use of such land is changed to a use other than that described in the application for the existing classification by said record owner, or (2) such land is sold by said record owner."

Section 12-504h was enacted in 1974; see Public Acts 1974, No. 74-343, § 6; to eliminate the necessity of applying annually for the classification of property as farm land, forest land or open space land. *Stepney Pond Estates, Ltd.* v. *Monroe*, 260 Conn. 406, 431 n.26, 797 A.2d 494 (2002). The statute thus provides that property may retain its classified status until the occurrence of certain events that terminate the classification and require the filing of a new application, these events being the sale of the property or a change in its use.

In interpreting the statute, we first note that, although § 12-504h is part of the real estate conveyance tax scheme, there is nothing in its language to suggest that it does not apply to the termination of a classification

---

[24] General Statutes §§ 12-504a through 12-504h pertain to the imposition of an additional real estate conveyance tax on property classified as farm land, forest land or open space land that has been sold or changes in use within a period of ten years from the acquisition of title to such property.

for the purpose of property tax assessments as well. Indeed, General Statutes § 12-504h directly refers to land that has been classified *"pursuant to"* §§ 12-107c, 12-107d or 12-107e of the property tax assessment scheme. (Emphasis added.) Furthermore, General Statutes § 12-504h provides that those classifications remain valid *"until"* the occurrence of the disqualifying events described therein. (Emphasis added.) Moreover, it would make no sense to construe § 12-504h as requiring the termination of a classification for the purpose of imposing a real estate conveyance tax, but not for the purpose of revaluing property on the grand list of a municipality. See *Cardenas* v. *Mixcus*, supra, 264 Conn. 326 (we presume legislature intended statutory provisions to be read together to create harmonious body of law). We therefore interpret § 12-504h in the context of both the conveyance tax statutes and the tax assessment statutes, in particular, General Statutes § 12-107d (a), which provides that, when a landowner files an application with the state forester for the designation of property as forest land, "the State Forester shall examine such application and, *if the State Forester determines that it is forest land,* said forester shall issue a triplicate certificate designating it as such . . . ." (Emphasis added.) Under the tax assessment scheme, the state forester is the only official to whom authority is expressly granted to determine whether property qualifies as forest land. We thus conclude that, for purposes of § 12-504h, property designated and classified as forest land cannot be deemed to have changed in use until the state forester makes the requisite determination that the land no longer qualifies as forest land.

We also rely on *Timber Trails Associates* v. *New Fairfield*, supra, 226 Conn. 407, for guidance in interpreting § 12-504h. The issue on appeal in *Timber Trails Associates* was "whether municipal tax assessors may declassify property as forest land upon the transfer of

the property, pursuant to a corporate dissolution, from a corporation to its sole shareholder without consideration." Id., 408. Following the dissolution of the corporation and the transfer of the property, the state forester, upon notification of the change of the owner of record, issued to the plaintiff, Timber Trails Associates, a certificate continuing the designation of the property as forest land. Id., 409. No conveyance tax was collected and Timber Trails Associates did not apply to continue the classification of the property as forest land. Id.

The defendants, the towns of New Fairfield and Sherman, argued that, under § 12-504h, the transfer of the property had terminated its classification as forest land, and that, consequently, the assessors were justified in declassifying the property and reassessing it at a higher value. Id., 410. Timber Trails Associates appealed to the Superior Court, which sustained the appeals,[25] concluding that the property retained its designation as forest land and that the assessors lacked the authority to declassify it. Id., 410–11. In affirming the trial court's decision, we concluded, inter alia, that, under the "plain language of § 12-504h"; id., 417; because the state forester had continued the designation of the property as forest land following its transfer to Timber Trails Associates, the assessors were required to continue the property's classification as forest land for tax assessment purposes pursuant to § 12-107d (c). Id., 417–18.

In the present case, the defendant claims that the plaintiff's unsold lots have changed in use, but the underlying argument is the same as the towns' argument in *Timber Trails Associates*, namely, that the assessors had the authority under § 12-504h to terminate the classification of the property because one of the two speci-

---

[25] Timber Trails Associates filed separate appeals in the Superior Court against the town of New Fairfield and the town of Sherman. See *Timber Trail Associates* v. *New Fairfield*, supra, 226 Conn. 408 n.1, 411.

fied events allegedly had occurred. See id., 413. Although the state forester in *Timber Trails Associates* continued the forest land designation after the potentially disqualifying event; id., 409; an event that did not occur in the present case because the state forester was never notified of a possible change in use, the significant common element is that the properties at issue in both cases were designated as forest land when the assessors sought to revoke their classifications. Accordingly, under our holding in *Timber Trails Associates*, the assessor in the present case lacked authority to deny the application of the plaintiff to continue the classification of its property as forest land because there had been no change in the status of the forest land designation.

The defendant makes three additional arguments, all of which are unpersuasive. The defendant first contends that it is impractical to require the input of the state forester in decisions as to the continued classification of property as forest land because assessors have direct access to information regarding changes in the condition or use of property that is not immediately available to the state forester. This argument fails, however, because assessors may notify the state forester of any newly acquired information under § 12-107d (b) and seek the cancellation of the forest land designation as soon as such information comes to light. See id., 409 (state forester, upon notification that owner of record had changed, examined status of property and issued to new owner certificate continuing designation of property as forest land). Accordingly, it is not impractical to require the state forester's input with respect to decisions as to the continued classification of property as forest land.

The defendant also argues that the change in use of classified property contemplated in § 12-504h is a limitation on the landowner's right to maintain the for-

est land classification that does not require further action on the part of the state forester once the disqualifying event occurs. We disagree. Section 12-504h does not suggest that property automatically will lose its classified status when it changes in use. The principal purpose of the statute is to eliminate the need for the filing of annual applications for classification by requiring the filing of a new application only upon the occurrence of one of the two specified events. See *Stepney Pond Estates, Ltd.* v. *Monroe,* supra, 260 Conn. 431 n.26.

Furthermore, there is no support in the statutory scheme for the defendant's assertion that a 1974 amendment to § 12-107d (a),[26] which purportedly allowed the state forester, in designating property as forest land, to rely on information conveyed to him by an assessor, rather than having to inspect the land in person,[27] can be interpreted as precluding the state forester's direct involvement in decisions to continue the classification of property as forest land when a claim is made that the use of the property has changed. Even if § 12-107d (a) could be construed to permit the state forester to rely on such information, that provision nonetheless requires that the state forester designate the property

---

[26] Public Acts 1974, No. 74-187, § 3.

[27] We note that the defendant's construction of the 1974 amendment is based on a comment that Senator Philip N. Costello, Jr., made during the floor debate on the proposed legislation. Specifically, Senator Costello stated that the "amendment . . . will avoid the necessity of the state forester actually viewing and being on the premises of land which he must certify to be [forest] land. Under [the proposed legislation, the state forester] can accept the reports from the local assessors . . . ." 17 S. Proc., Pt. 4, 1974 Sess., p. 1304. Section 12-107d (a), as amended by Public Acts 1974, No. 74-187, § 3, merely provided, however, that "the state forester shall examine [the written application submitted by the landowner] and, if he determines that it is forest land, he shall issue a . . . certificate designating [the land] as such . . . ." General Statutes (Rev. to 1975) § 12-107d (a). The amended statutory provision thus makes no reference to other information, including information conveyed by an assessor, that the state forester may consider in deciding whether to approve a landowner's application to designate property as forest land.

as forest land *before* it may be classified as forest land by an assessor. See General Statutes § 12-107d (c) and (d). Accordingly, the 1974 amendment, as interpreted by the defendant, provides no basis for permitting an assessor to deny an application to continue the classification of property as forest land without the cancellation of the forest land designation.

The defendant also asserts that the assessor properly denied the plaintiff's application because the state forester had no legal authority to designate the plaintiff's property as forest land in 1990. The defendant notes that (1) the property did not meet the statutory criteria for designation as forest land under § 12-107b (b), and (2) the plaintiff provided inaccurate and misleading information in its application to designate the property as forest land. That argument is irrelevant in the present context, however, because it has no bearing on the issue of whether the assessor had the requisite authority to deny the application of the plaintiff to continue the classification of its property as forest land.[28] Moreover, claims regarding the erroneous designation of property as forest land must be directed to the state forester, or to the Superior Court, pursuant to the express provisions of § 12-107d (f),[29] which authorize the landowner

[28] For this reason, we do not consider the defendant's separate claim that the trial court improperly declined to consider that the subdivision of the plaintiff's forest land into residential lots was a change of use within the meaning of § 12-504h that justified the assessor's declassification of the unsold lots as forest land. We also do not consider *Matzul* v. *Montville*, 70 Conn. App. 442, 798 A.2d 1002, cert. denied, 261 Conn. 923, 806 A.2d 1060 (2002), on which the defendant relies, because *Matzul* stands for the proposition that an assessor has broad authority to make substantive changes in property classifications in order to conform to legal requirements when property has been classified erroneously. See id., 449–51.

[29] General Statutes § 12-107d (f) provides in relevant part: "The municipality within which land designated as forest land by the State Forester is situated or the owner of land which the State Forester has refused to designate as such may appeal from the decision of the State Forester to the superior court for the judicial district within which such municipality is situated. Such appeal shall be taken within thirty days after the issuance

or municipality to appeal to the Superior Court from the state forester's approval or disapproval of an application to designate property as forest land *within thirty days* of such decision.

The defendant finally maintains that the trial court improperly relied on *Timber Trails Associates* v. *New Fairfield*, supra, 226 Conn. 407, in concluding that claims of a misleading application to designate property as forest land, an erroneous designation, or a change of use under § 12-504h, must be directed to the state forester rather than to the assessor. The defendant contends that *Timber Trails Associates* did not involve a claim that the state forester was misled by an application, that he exceeded his statutory authority when he initially designated the property in question as forest land, that the land did not meet the statutory definition of forest land or that the use of the land had changed. The defendant misconstrues the trial court's opinion.

The defendant correctly observes that *Timber Trails Associates* did not involve a misleading application, the state forester's authority to designate property initially as forest land, a failure to satisfy the statutory criteria for the definition of forest land or a change in the use of forest land. See generally id., 408–10. The trial court in the present case, however, properly cited *Timber Trails Associates* v. *New Fairfield*, supra, 226 Conn. 417, for the proposition that "[t]he clear language of [§ 12-107d] provides that as to forest land, the state forester and not the assessor, determines the designation." Accordingly, the trial court properly relied on *Timber Trails Associates* in concluding that the state forester is the only official authorized under the statutory scheme to designate property as forest land.[30]

of the certificate designating such land as forest land or the refusal to issue such certificate, as the case may be . . . ."

[30] The logic of the concurring opinion, which disputes the applicability of Public Acts 2003, No. 03-154 (P.A. 03-154), in this case, is fundamentally flawed. The concurrence asserts that P.A. 03-154 applies only in cases in

## II

The defendant next argues that, even if this court concludes that the assessor improperly denied the plaintiff's application, the trial court accepted unreliable testimony as to the amount of land designated as forest land in Carmel Hollow I, thereby producing inconsistent factual results. We disagree.

According to the parties' stipulation of facts, the state forester, in 1990, designated approximately 106.2 acres of land in Carmel Hollow I and Carmel Hollow II as forest land. The state forester did not break down the acreage by lot within each subdivision. The map approved by the state forester, however, shows that eight of the fifteen lots at issue in this appeal consist entirely of forest land and that seven lots consist of both farm land and forest land.[31]

which the statutory text at issue, when read in conjunction with other statutes, is plain and unambiguous. The concurrence then asserts that § 12-504h, when read in conjunction with §§ 12-107a through 12-107e, cannot reasonably be regarded as plain and unambiguous because there is another competing interpretation of § 12-504h offered by the defendant that is not as persuasive as the majority's, but that is nonetheless "plausible." The competing interpretation, however, is based entirely on the language of § 12-504h, without consideration of its relationship to other statutes and, thus, is in direct contradiction to the theory espoused in the concurring opinion.

The concurrence adopts this approach on the basis of the majority's conclusion that the statutory scheme, namely, §§ 12-107a through 12-107e, is "silent" regarding the authority of an assessor to declassify property. The concurrence, however, selectively quotes from the majority opinion, which goes on to state that, despite the absence of express language addressing the authority of an assessor to declassify property designated as forest land, the relevant statutory provisions, namely, § 12-107d (a) through (e), are not ambiguous because the only reasonable interpretation of the entire statutory scheme is that an assessor does not have the authority to declassify property solely on the basis of the assessor's determination that the use of the land has changed. Accordingly, the concurrence incorrectly represents the majority opinion and then compounds the error by describing as "plausible" an alternative interpretation of § 12-504h that does not take into account any of the other statutory provisions that bear on the issue.

[31] In its memorandum of decision, the trial court identified lots 13 and 14 in Carmel Hollow I and lots 1, 3, 4, 5, 6 and 7 in Carmel Hollow II as

The record discloses that the seven lots containing both farm land and forest land constitute 47.47 acres. Of this amount, the assessor classified 22.53 acres as farm land. The plaintiff contended, however, that the seven lots contained only 13.13 acres of farm land, with the balance of 34.34 acres consisting of forest land.

At trial, there was considerable discussion as to the amount of forest land in each of the seven lots. The plaintiff's president, H. Sean Mathis, who did not claim to be a land surveyor or engineer, testified that he had calculated the percentage of forest land in each of the lots by using a grid that he had created and placed over the map approved by the state forester showing the areas designated as forest land. The trial court initially sustained the defendant's repeated objections to Mathis' testimony on the ground that the plaintiff had not established that Mathis was qualified to make such calculations. When the plaintiff persisted in attempting to introduce the calculations, however, the defendant ultimately agreed to allow the court to accept as full exhibits a map showing the grid that Mathis had used in making the calculations and a document indicating the percentage of forest land and farm land that Mathis had calculated for each of the seven lots. The exhibits indicated that the seven lots contained 34.34 acres of forest land.

In its memorandum of decision, the trial court first addressed the farm land issue. The court did not conclude that the assessor's calculation of the amount of farm land on the seven lots was correct but only that "[t]he evidence did not persuade the court that, in light of the lots sold containing farm land, there should have been *more than* 22.53 acres classified as farm land." (Emphasis added.) After determining that the assessor

consisting entirely of forest land. The trial court identified lots 1, 3, 5, 7, 8, 11 and 12 in Carmel Hollow I as consisting of both farm land and forest land.

should not have declassified the forest land, the court then calculated how much acreage in each of the seven lots consisted of forest land. The court concluded that 34.34 acres in the seven lots consisted of forest land, a figure identical to the amount of forest land calculated by Mathis and entered into evidence by means of the contested exhibits.

The defendant claims that the trial court's findings are clearly erroneous because, when the 34.34 acres of forest land found by the court is added to the 22.53 acres of land classified as farm land by the assessor, the total acreage for the seven lots is 56.87 acres, more than nine acres greater than the actual total of 47.47 acres. The defendant's claim has no merit.

We begin by setting forth the applicable standard of review. "The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) *Frillici* v. *Westport*, 264 Conn. 266, 277, 823 A.2d 1172 (2003).

In the present case, the evidence in the record supports the trial court's factual finding as to the forest land acreage within the seven lots. It was entirely within the court's discretion to rely upon the testimony of Mathis and the exhibit that was entered into evidence reflecting his calculations. Indeed, the defendant knew that the information provided by Mathis might be used by the court when the court declared during the pro-

ceeding that it had not yet decided, but would consider at some future time, how much weight such evidence should be given.

The trial court's findings as to the amount of forest land and farm land within the seven lots also were consistent. The court did not find that 22.53 acres consisted of farm land, but concluded that "[t]he evidence did not persuade the court that, in light of the lots sold containing farm land, there should have been *more than* 22.53 acres classified as farm land." (Emphasis added.) Accordingly, because the trial court did not make a finding regarding the actual amount of farm land within the seven lots, the court's subsequent finding that the unsold lots consisted of 34.34 acres of forest land was not clearly erroneous.

The judgment is affirmed.

In this opinion SULLIVAN, C. J., and PARKER, J., concurred.

BORDEN, J., with whom NORCOTT, J., joins, concurring. I agree with the result reached in the majority opinion, and with most of the statutory analysis contained therein. I write separately, however, because I do not agree with the majority that Public Acts 2003, No. 03-154, § 1 (P.A. 03-154), governs the question of statutory interpretation presented by this case.

Public Act 03-154, § 1, provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." It is no secret that P.A. 03-154 was enacted in order legislatively to overrule

that part of *State* v. *Courchesne,* 262 Conn. 537, 570, 577, 816 A.2d 562 (2003),[1] wherein this court abandoned the "plain meaning rule" as requiring that, in interpreting legislative language, we must first surmount a threshold of ambiguity of the language before considering other sources of its meaning. See *Paul Dinto Electrical Contractors, Inc.* v. *Waterbury,* 266 Conn. 706, 715 n.10, 785 A.2d 1181 (2003). Thus, in order for P.A. 03-154 to apply to a particular legislative text, we must first determine that, considering that text along with other statutes, "the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results . . . ." Furthermore, in this context, we have defined the term " 'ambiguous' " to mean that the text is susceptible of more than one plausible meaning. *State* v. *Courchesne,* supra, 572.

In my view, this is not an appropriate case for the application of P.A. 03-154, because the statutory text at issue, namely, General Statutes §§ 12-107a through 12-107e, when read in connection with other statutes, as P.A. 03-154 requires, is not plain and unambiguous. Put another way, the statutory text at issue is ambiguous because the competing interpretation offered by the defendant, the town of Bethlehem, albeit not as persuasive as that offered by the plaintiff, Carmel Hollow Associates Limited Partnership, is nonetheless *plausible.* Therefore, the text is not plain and unambiguous, and P.A. 03-154 does not govern our resolution of the present case.

The defendant's argument rests primarily on General Statutes § 12-504h, which is entitled, "Termination of

---

[1] It is ironic that the legislative debate surrounding P.A. 03-154 specifically indicated that its purpose was to overrule that part of *Courchesne.* See 46 S. Proc., Pt. 10, 2003 Sess., p. 3193; 46 H.R. Proc., Pt. 10, 2003 Sess., p. 3326. If we were to read P.A. 03-154 literally, and assume that it is not ambiguous in any way, we would be barred by it from consulting that very legislative history in order to determine that its purpose was to overrule *Courchesne.*

classification as farm, forest or open space land." Section 12-504h provides: "Any land which has been classified by the record owner as farm land pursuant to section 12-107c, as forest land pursuant to section 12-107d, or as open space land pursuant to section 12-107e shall remain so classified without the filing of any new application subsequent to such classification, notwithstanding the provisions of said subsections 12-107c, 12-107d and 12-107e, *until either of the following shall occur: (1) The use of such land is changed to a use other than that described in the application for the existing classification by said record owner,* or *(2) such land is sold by said record owner.*" (Emphasis added.) Several factors indicate to me that, based on this statutory text, the defendant's interpretation is plausible.

First, as the majority acknowledges, "[t]he statutory scheme [of §§ 12-107a through 12-107e] is silent regarding the role of an assessor in the declassification of property that the state forester has designated as forest land." Thus, if the statutory scheme is silent regarding a particular scenario, it seems to me that we are required to look to something beyond its text in order to ascertain its meaning *as it applies to that scenario.*

Second, the title of § 12-504h indicates that it addresses situations involving the termination of the classification of forest land, which is the factual scenario of this case. We have often relied in part on the title of legislation in ascertaining its meaning. *Burke* v. *Fleet National Bank,* 252 Conn. 1, 13, 742 A.2d 293 (1999) ("[a]lthough the title of a statute is not determinative of its meaning, we often have looked to a statute's title as some evidence of that meaning"); see *Travelers Ins. Co.* v. *Pondi-Salik,* 262 Conn. 746, 755, 817 A.2d 663 (2003) ("[t]he title of legislation when it is acted upon by the legislature is significant and often a valu-

able aid to construction" [internal quotation marks omitted]).

Third, both subdivisions (1) and (2) of § 12-504h are cast in the passive voice: "(1) The use of such land *is changed to a use other than that described in*" its existing classification, "or (2) such land *is sold by said record owner.*" (Emphasis added.) It does not say, for example, regarding subdivision (1), "when the *state forester changes* the classification based on its change to a different use." It is a plausible contention, therefore, that, by employing the passive voice in this manner and by *not* referring to the state forester as an active reclassifier, the legislature intended to permit the defendant to reclassify land when its current use has changed. Thus, this use of the passive voice is susceptible of a plausible interpretation that, under the entire legislative scheme regarding the reclassification of forest land, the local tax assessor, who is the official likely to learn of a changed use, can take official cognizance of that change and tax the property accordingly. The plausibility of this interpretation is buttressed by reference to subdivision (2) of § 12-504h, which provides that the classification may be changed when "(2) such land *is sold by said record owner.*" (Emphasis added.) It would be the local tax assessor who would know when the property has been sold and, therefore, the argument is plausible that the tax assessor may reclassify the land under *either* subdivision (1) or (2) of § 12-504h.

I reiterate that I do not agree with the defendant's contentions, and that I do agree with most of the majority's statutory analysis and with its ultimate conclusion that, based on the entire statutory scheme, the local tax assessor does not have the authority to reclassify forest land based solely on the assessor's determination that its use has changed. I disagree only with the premise of the majority that P.A. 03-154 governs this case because, in my view, the statutory text at issue cannot

reasonably be regarded as plain and unambiguous. Therefore, despite the recent enactment of P.A. 03-154, a proper statutory analysis in the present case ought "to consider *all* of the relevant evidence bearing on the meaning of the language at issue." (Emphasis in original.) *State* v. *Courchesne*, supra, 262 Conn. 575.