******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# JAMES R. BRENNAN *v.* BOARD OF ASSESSMENT APPEALS OF THE TOWN OF SEYMOUR
## (AC 46258)

Elgo, Suarez and Clark, Js.

*Syllabus*

The plaintiff appealed to this court from the judgment of the trial court affirming the decision of the defendant board of assessment appeals, which upheld the revaluation of the plaintiff's residential dwelling and the declassification of his nonresidential land as farmland by the town tax assessor. During a trial to the court, the plaintiff presented testimony from H, a licensed appraiser, that the residential portion of the plaintiff's property was valued at $105,000, a valuation which exceeded the assessor's allegedly excessive valuation. The court thereafter suggested that it could rely on the $105,000 valuation given by H and issue a decision only as to the plaintiff's claim regarding the declassification of his nonresidential property, and counsel for both parties agreed. Following trial, the court determined that the plaintiff had abandoned his claim regarding the valuation of his residential dwelling during the trial and that the nonresidential property was not currently being used as farmland in accordance with the factors set forth in the applicable statute (§ 12-107c). *Held*:

1. The plaintiff could not prevail on his claim that the trial court erred in determining that he had abandoned his claim regarding the proper valuation of his residential dwelling; because the plaintiff's counsel agreed with the court at trial that it did not have to resolve the plaintiff's claim regarding the valuation of his residential dwelling and expressly assented to the court's suggestion that it needed to address only the claim regarding the declassification of the plaintiff's nonresidential property as farmland, the plaintiff had abandoned his claim regarding the valuation of his residential dwelling.

2. The plaintiff's claim that the trial court improperly considered the factors set forth in § 12-107c (a) in determining whether the plaintiff's nonresidential property was still being used as a farm for purposes of the statute (§ 12-504h) governing the termination of a farmland classification was unavailing: this court determined that it was clear that, when §§ 12-107c and 12-504h are read together, the declassification of property previously classified as farmland occurs when the use of such land is changed or when the property is sold by the record owner, and the fact that an assessor makes no actual change in the classification of a property previously classified as farmland for many years after the occurrence of one of the triggering events in § 12-504h is irrelevant; moreover, in the present case, the assessor was required to conduct a townwide revaluation of all the properties for the town's grand list and, during

the course of his townwide revaluation, the assessor conducted a field review of the plaintiff's nonresidential property, determined that it was not in actual use as farmland and declassified it as farmland, and the plain language of §§ 12-107c and 12-504h, read within the context of the overall statutory scheme affording favorable tax treatment to certain undeveloped property and case law applying that scheme, makes clear that it was proper for the trial court to consider the factors set forth in § 12-107c when it affirmed the assessor's determination.

3. The trial court's finding concerning the current use of the plaintiff's nonresidential property was not clearly erroneous as there was ample evidence in the record to support the court's determination that the current use of that property did not constitute farm use: in making its determination, the court relied on the assessor's examination of the plaintiff's nonresidential property and his testimony that, inter alia, he had not seen any farming activity on the nonresidential property and had seen sheep on such property on only one occasion when he observed a few sheep run out of the plaintiff's barn, and that he took into account the factors set forth in § 12-107c (a), including the acreage of the land, the portion of the land in actual use for farming or agricultural operations, the productivity of the land or lack thereof, the gross income derived therefrom, or losses, as here, and the nature and value of the equipment, or lack thereof, used in connection therewith; moreover, although the plaintiff testified that his prior use of the nonresidential property consisted of raising multiple species and breeds of livestock and animals, he also testified that during the townwide revaluation he only had four female sheep on his nonresidential property and that he no longer had any farming equipment, such as a tractor or lifting equipment, on the nonresidential property.

Argued November 13, 2023—officially released June 11, 2024

*Procedural History*

Appeal from the decision of the defendant affirming the decision of its tax assessor to, inter alia, declassify the plaintiff's nonresidential land as farmland, brought to the Superior Court in the judicial district of Ansonia-Milford and tried to the court, *Hon. Arthur A. Hiller*, judge trial referee; judgment for the defendant, from which the plaintiff appealed to this court. *Affirmed.*

*Steven P. Kulas*, for the appellant (plaintiff).

*Raymond J. Rigat*, for the appellee (defendant).

*Opinion*

SUAREZ, J. In this administrative tax appeal, the plaintiff, James R. Brennan, appeals from the judgment of the trial court affirming the decision of the defendant, the Board of Assessment Appeals of the Town of Seymour (board), which upheld the revaluation of his residential dwelling and the declassification of his 7.26 acres of nonresidential land (excess property) as farmland by the Seymour tax assessor (assessor). On appeal, the plaintiff claims that the court improperly (1) determined that he had abandoned his claim regarding the proper value of his residential dwelling, (2) considered the factors set forth in General Statutes § 12-107c (a) in determining whether the excess property was no longer being used as a farm for purposes of General Statutes § 12-504h, and (3) determined that the plaintiff changed the use of the excess property so as to have lost the entitlement to the farmland designation previously granted to him by the assessor. We affirm the judgment of the trial court.

The following facts, as found by the court or which are undisputed by the parties, and procedural history are relevant to our resolution of this appeal. The plaintiff owns approximately eight acres of real property located in Seymour (town). Of this land, 40,000 square feet are devoted to residential use, with a residential dwelling located thereon. Previously, the assessor had classified the excess property as farmland for tax purposes. On October 1, 2020, as a result of a townwide reassessment, the assessor terminated the classification of the plaintiff's excess property as farmland and assessed the plaintiff's property, in its entirety, as follows: "Dwelling—$90,100; Outbuildings—$10,400; and Land—$122,000, for a total assessment of $222,500." The plaintiff appealed the assessor's valuation of his residential dwelling and the assessor's declassification

of his excess property to the board, which upheld the assessor's determinations.

On April 28, 2021, the plaintiff filed an appeal from the board's decision in the Superior Court. The plaintiff's administrative tax appeal consisted of a two count complaint. In count one of his complaint, the plaintiff alleged that, on October 1, 2020, he was the record owner of the subject property and that the valuation of his property "by the assessor was not its true and actual value on that assessment date but was grossly excessive, disproportionate and unlawful." He further alleged that "the board failed to reduce the value of the dwelling . . . ." In count two of his complaint, the plaintiff alleged that the "assessor of the town reduced the farm acreage from 7.26 acres to 0 acres." He also alleged that "the board failed to restore the farm acreage to 7.26 acres."

The court, *Hon. Arthur A. Hiller*, judge trial referee, held a trial de novo that was conducted remotely over the course of four days.[1] On January 26, 2023, the court issued a memorandum of decision, rendering judgment in favor of the defendant. In its memorandum of decision, the court determined that the plaintiff had abandoned count one of his administrative tax appeal. With respect to count two, the court found that the excess property was not currently being used as a farm in accordance with the factors set forth in § 12-107c (a). This appeal followed. Additional facts and procedural history will be set forth as necessary.

---

[1] On September 12, 2022, the court heard testimony from the plaintiff, the plaintiff's appraiser, the plaintiff's neighbors, the assessor, and an advocate from the Connecticut Farm Bureau Association. At the conclusion of evidence that day, the court asked the parties if they wanted to have an opportunity to introduce additional evidence as to the plaintiff's farm activity. On October 3, 2022, the court held a hearing, and the plaintiff offered into evidence his 2017–2021 tax records, which the court admitted into evidence without objection. On November 21, 2022, and January 19, 2023, the court held two additional hearings where it heard arguments by counsel.

Before addressing the merits of the plaintiff's claims, we begin by setting forth the applicable legal principles underlying municipal tax appeals, as well as our applicable standard of review. "We review a court's determination in a tax appeal pursuant to the clearly erroneous standard of review. Under this deferential standard, [w]e do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling. . . .

"We afford wide discretion to the court's determination of the value of property in a property tax appeal. . . . When the court acts as the fact finder, it may accept or reject evidence regarding valuation as it deems appropriate. . . . Because a tax appeal is heard de novo, a trial court judge is privileged to adopt whatever testimony he reasonably believes to be credible. . . . Thus, credibility determinations are within the exclusive province of the court." (Citations omitted; internal quotation marks omitted.) *Digital 60 & 80 Merritt, LLC* v. *Board of Assessment Appeals*, 211 Conn. App. 559, 577–78, 274 A.3d 952, cert. denied, 343 Conn. 926, 275 A.3d 1212 (2022).

"[General Statutes §] 12-117a,[2] which allows taxpayers to appeal the decisions of municipal boards of tax

---

[2] General Statutes § 12-117a provides in relevant part: "Any person . . . claiming to be aggrieved by the action of . . . the board of assessment appeals . . . in any town or city may . . . make application, in the nature

review to the Superior Court, provide[s] a method by which an owner of property may directly call in question the valuation placed by assessors upon his property . . . . In a § 12-117a appeal, the trial court performs a two step function. The burden, in the first instance, is upon the plaintiff to show that he has, in fact, been aggrieved by the action of the board in that his property has been overassessed. . . . In this regard, [m]ere overvaluation is sufficient to justify redress under [§ 12-117a], and the court is not limited to a review of whether an assessment has been unreasonable or discriminatory or has resulted in substantial overvaluation. . . . Whether a property has been overvalued for tax assessment purposes is a question of fact for the trier. . . . The trier arrives at his own conclusions as to the value of land by weighing the opinion of the appraisers, the claims of the parties in light of all the circumstances in evidence bearing on value, and his own general knowledge of the elements going to establish value including his own view of the property. . . .

"Only after the court determines that the taxpayer has met his burden of proving that the assessor's valuation was excessive and that the refusal of the board of tax review to alter the assessment was improper, however, may the court then proceed to the second step in a § 12-117a appeal and exercise its equitable power to grant such relief as to justice and equity appertains . . . . If a taxpayer is found to be aggrieved by the decision of the board of tax review, the court tries the matter de novo and the ultimate question is the ascertainment of the true and actual value of the applicant's property. . . . If the court finds that the property has been in fact overvalued, it has the power to, and should, correct the valuation. . . .

of an appeal therefrom to the superior court for the judicial district in which such town or city is situated . . . ."

"Section 12-117a provides a remedy only for an aggrieved taxpayer seeking to reduce his tax assessment. It provides no remedy for a municipality claiming to have undervalued a taxpayer's property." (Citations omitted; footnote added; internal quotation marks omitted.) *Konover* v. *West Hartford*, 242 Conn. 727, 734–36, 699 A.2d 158 (1997).

"In contrast to § 12-117a . . . which allows a taxpayer to challenge the assessor's valuation of his property, [General Statutes] § 12-119[3] allows a taxpayer to bring a claim that the tax was imposed by a town that had no authority to tax the subject property, or that the assessment was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of [the real] property . . . . Our case law makes clear that a claim that an assessment is excessive is not enough to support an action under this statute. Instead, § 12-119 requires an allegation that something more than mere valuation is at issue. . . . The first category in § 12-119 embraces situations where a tax has been laid on a property not taxable in the municipality where it is situated. . . . This category is not applicable to the facts of this case and, thus, will not be addressed.

"The second category [in § 12-119] consists of claims that assessments are (a) manifestly excessive and (b) . . . could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of the property. . . . Cases in this category must contain allegations beyond the mere claim

---

[3] General Statutes § 12-119 provides in relevant part: "When it is claimed that . . . a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof . . . may, in addition to the other remedies provided by law, make application for relief to the superior court for the judicial district in which such town or city is situated. . . ."

that the assessor overvalued the property. [The] plaintiff . . . must satisfy the trier that [a] far more exacting test has been met: either there was misfeasance or nonfeasance by the taxing authorities, or the assessment was arbitrary or so excessive or discriminatory as in itself to show a disregard of duty on their part. . . . Only if the plaintiff is able to meet this exacting test by establishing that the action of the assessors would result in illegality can the plaintiff prevail in an action under § 12-119. The focus of § 12-119 is whether the assessment is illegal. . . . The statute applies only to an assessment that establishes a disregard of duty by the assessors." (Citations omitted; footnote added; internal quotation marks omitted.) *Tyler's Cove Assn., Inc.* v. *Middlebury*, 44 Conn. App. 517, 526–27, 690 A.2d 412 (1997). We address the plaintiff's claims in turn.[4]

## I

The plaintiff first claims that the court erred in determining that he had abandoned his claim regarding the proper valuation of his residential dwelling. Specifically, the plaintiff argues that "the record does not show that his counsel waived or abandoned his claim under count one of the complaint. Counsel's acknowledgement of the trial court's finding as to the value of the residential property is no more than that and should not be construed as a waiver or an abandonment of the plaintiff's claim in count one of the complaint." We are not persuaded.

The following additional facts are relevant to the resolution of this claim. In count one of his complaint, the plaintiff alleged that the assessor valued the residential dwelling at $90,100. He further alleged that the valuation of the residential dwelling was "not its true and

[4] Although the plaintiff did not explicitly set forth the statutory basis for this administrative tax appeal in his complaint, we note that such actions are brought pursuant to § 12-117a or § 12-119.

actual value on [October 1, 2020] but was grossly excessive, disproportionate and unlawful." During the September 12, 2022 trial, the plaintiff presented testimony from Susan Homiski, a licensed appraiser, that the residential portion of the property, which included both the residential dwelling and the 40,000 square foot parcel on which it was situated, was valued at $105,000. It was not clear from Homiski's testimony, however, whether her valuation included the plaintiff's dwelling because her written appraisal stated that the house was unmarketable. On January 19, 2023, the court held a hearing to clarify whether Homiski's $105,000 valuation considered the dwelling in its current condition or whether it considered that the dwelling had to be demolished. At the January 19, 2023 hearing, the following colloquy between the court, the plaintiff's counsel, and the defendant's counsel took place:

"The Court: So, how do I get a value for the house?

"[The Plaintiff's Counsel]: Well, I think, if you look at our appraisal, [Homiski] values the lot with the house as it's currently existing on it. So . . . the only thing I could surmise is she valued that particular piece of property, knowing that the house may be taken down, and that's what it's worth.

"The Court: Oh, boy. She doesn't say that at all.

"[The Plaintiff's Counsel]: I know but—

"The Court: Can we agree, [Defendant's Counsel] . . . that I don't have to worry about the assessment of the house? We'll buy $105,000, and I don't have to worry about that. I don't have to worry about count one, is that fair?

"[The Defendant's Counsel]: I would agree, Your Honor. Because if you look at the assessed value of the house, it was close to that.

"The Court: Good. So, [Plaintiff's Counsel]?

"[The Plaintiff's Counsel]: *That's fine, Your Honor.*

"The Court: So, I only have to do count two?

"[The Defendant's Counsel]: Correct. Whether it's a farm or not.

"The Court: Oh, much better.

\* \* \*

"The Court: So, I only have to decide whether the use [of the plaintiff's excess property] changed. That's it.

"[The Plaintiff's Counsel]: *Yes, Your Honor.*

"The Court: That's it. So, I can do this—I don't have to write the law. I just have to decide whether the use [of the plaintiff's excess property] changed.

"[The Defendant's Counsel]: Yes, Your Honor.

"The Court: I appreciate that. That should make it much easier for me, either it did, or it didn't.

"[The Plaintiff's Counsel]: That's absolutely I think what the statute requires and that's the basis of our appeal on that." (Emphasis added.)

In its memorandum of decision, the court stated that the plaintiff had abandoned count one of his complaint and that the parties had "agreed that the only decision for the court to make" concerned the declassification of the plaintiff's excess property. "Both our Supreme Court and this court have stated the principle that, when a party abandons a claim or argument before the trial court, that party waives the right to appellate review of such claim because a contrary conclusion would result in an ambush of the trial court . . . ." (Internal quotation marks omitted.) *State* v. *McLaughlin*, 135 Conn. App. 193, 198, 41 A.3d 694, cert. denied, 307 Conn. 904, 53 A.3d 219 (2012).

In the present case, with respect to count one, the court questioned the parties during the January 19, 2023 hearing as to how it should arrive at a value for the plaintiff's dwelling. The court asked the parties whether it had to "worry about the assessment of the house." The court suggested that it could rely on the $105,000 valuation given by Homiski and counsel for both parties agreed. Upon further inquiry, the court stated, "I don't have to worry about count one, is that fair?" Counsel for both parties agreed. At the conclusion of the January 19, 2023 hearing, the court, once again, confirmed that it only needed to address count two, stating: "So, I only have to decide whether the use [of the plaintiff's excess property] changed. That's it." The plaintiff's counsel replied, "[y]es, Your Honor." Therefore, by agreeing with the court that it did not have to resolve the claim set forth in count one, and by expressly assenting to the court's suggestion that all it had to address was count two, the plaintiff abandoned the claim alleged in count one of his complaint. Accordingly, we decline to afford the plaintiff any relief with respect to this claim.

## II

Next, the plaintiff claims that, in determining whether the plaintiff's excess property was still being used as a farm for purposes of § 12-504h, the court improperly considered the factors set forth in § 12-107c (a).[5] He asserts that the only "task for the assessor and for the trial court on appeal was to determine if there had been a change of ownership of the [excess] property or a change of use for the [excess] property as provided for in [§ 12-504h]." The defendant, on the other hand, argues that the court properly considered the factors enumerated in § 12-107c (a) in determining that the

---

[5] We interpret this claim as being brought under § 12-119 because the plaintiff asserts that the assessment of his excess property was manifestly excessive and could not have been arrived at except by disregarding the provisions of § 12-504h.

plaintiff's excess property was no longer entitled to retain its classification as farmland. We agree with the defendant.

We begin by setting forth our standard of review and relevant legal principles that govern the resolution of this claim. "Because this issue raises a question of statutory interpretation, our review is plenary. . . . A fundamental tenet of statutory construction is that statutes are to be considered to give effect to the apparent intention of the lawmaking body. . . . The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . In the present case, the defendant relies on § 12-504h, a provision contained in the real estate conveyance tax scheme. . . . The provisions that govern our resolution of the issue, however, are contained in the property tax assessment scheme, specifically, General Statutes §§ 12-107a through 12-107e, which pertain to the assessment and classification of property as farm land, forest land and open space land." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem*, 269 Conn. 120, 129–30, 848 A.2d 451 (2004). Our Supreme Court has stated that, when "more than one [statutory provision] is involved, we presume that the legislature intended [those provisions] to be read together to create a harmonious body of law . . . ." (Internal quotation marks omitted.) *Cardenas* v. *Mixcus*, 264 Conn. 314, 326, 823 A.2d 321 (2003). We conclude that the plain language of §§ 12-107c and 12-504h, read within the context of the overall statutory scheme affording favorable tax treatment to certain undeveloped property and

case law applying that scheme, makes clear that it was proper for the court to consider the factors in § 12-107c in determining whether the excess property was still being used as a farm for purposes of § 12-504h.

The statutory scheme relating to the designation and classification of farmland for tax assessment purposes is contained in chapter 203 of the General Statutes, entitled "Property Tax Assessment," and begins with a declaration of policy. As our Supreme Court has articulated, "General Statutes [(Rev. to 2003)] § 12-107a provides in relevant part: It is hereby declared (a) that it is in the public interest to encourage the preservation of farm land, forest land, and open space land in order to maintain a readily available source of food and farm products . . . to conserve the state's natural resources and to provide for the welfare and happiness of the inhabitants of the state, (b) that it is in the public interest to prevent the forced conversion of farm land, forest land and open space land to more intensive uses as the result of economic pressures caused by the assessment thereof for purposes of property taxation at values incompatible with their preservation as such farm land, forest land and open space land, and (c) that the necessity in the public interest of the enactment of the provisions of sections 12-107b to 12-107e, inclusive, is a matter of legislative determination. Thus, the purpose of §§ 12-107a through 12-107e is to encourage the preservation of property designated as farm land . . . by ensuring against the conversion of such land to more intensive uses as the result of higher property tax assessments." (Internal quotation marks omitted.) *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem,* supra, 269 Conn. 130–31.

General Statutes § 12-107b (1) provides in relevant part: "The term 'farm land' means any tract or tracts of land, including woodland and wasteland . . . constituting a farm unit . . . ." Section 12-107c sets forth

the procedure by which an owner of land may request that their property be classified as farmland. Section 12-107c (a) provides in relevant part: "An owner of land may apply for its classification as farm land on any grand list[6] of a municipality by filing a written application for such classification with the assessor thereof . . . . The assessor shall determine whether such land is farm land and, if such assessor determines that it is farm land, he or she shall classify and include it as such on the grand list. In determining whether such land is farm land, such assessor shall take into account, among other things, the acreage of such land, the portion thereof in actual use for farming or agricultural operations, the productivity of such land, the gross income derived therefrom, the nature and value of the equipment used in connection therewith, and the extent to which the tracts comprising such land are contiguous. The assessor shall not deny the application of an owner of land for classification of such land as farm land if such land meets the criteria for classification as farm land pursuant to this subsection. . . ." (Footnote added.)

Section 12-504h is contained in chapter 223 of the General Statutes, entitled "Real Estate Conveyance Tax," and provides in relevant part: "Any such classification of farm land pursuant to section 12-107c . . . shall be deemed personal to the particular owner who requests and receives such classification and shall not run with the land. Any such land which has been classified by a record owner shall remain so classified without

---

[6] A grand list is the aggregate list of assessed values of all property in a given municipality. See General Statutes § 12-55 (a). The contents of a town's grand list is defined by § 12-55 (a), which provides in relevant part: "Each [town's] grand list shall contain the assessed values of all property in the town, reflecting the statutory exemption or exemptions to which each property or property owner is entitled, and including, where applicable, any assessment penalty added . . . for the assessment year commencing on the October first immediately preceding. . . ."

the filing of any new application subsequent to such classification, notwithstanding the provision of sections 12-107c, 12-107d, 12-107e and 12-107g, until either of the following shall occur: (1) The use of such land is changed to a use other than that described in the application for the existing classification by said record owner, or (2) such land is sold or transferred by said record owner. . . ."[7]

"Section 12-504h was enacted in 1974 . . . to eliminate the necessity of applying annually for the classification of property as farm land, forest land or open space land. . . . The statute thus provides that property may retain its classified status until the occurrence of certain events that terminate the classification and require the filing of a new application, these events being the sale of the property or a change in its use. . . .

"[A]lthough § 12-504h is part of the real estate conveyance tax scheme, there is nothing in its language to suggest that it does not apply to the termination of a classification for the purpose of property tax assessments as well. Indeed, [§ 12-504h] directly refers to land that has been classified *pursuant to* §§ 12-107c, 12-107d or 12-107e of the property tax assessment scheme. . . . Furthermore, [§ 12-504h] provides that those classifications remain valid *until* the occurrence of the disqualifying events described therein. . . . Moreover, it would make no sense to construe § 12-504h as requiring the termination of a classification for the purpose of imposing a real estate conveyance tax, but not for the purpose of *revaluing* property on the grand list of a municipality." (Citation omitted; emphasis altered; internal quotation marks omitted.) *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem*, supra, 269 Conn. 140–41.[8]

---

[7] We note that, after the court decided *Carmel Hollow Associates Ltd. Partnership*, §§ 12-107a and 12-504h were amended, effective July 1, 2007, to include maritime heritage land. See Public Acts 2007, No. 07-127, §§ 3 and 10.

[8] Our Supreme Court, in *Carmel Hollow Associates Ltd. Partnership*, addressed the issue of whether a tax assessor is authorized to declassify

Under the property tax assessment scheme, each town is required to periodically revalue property on its grand list. General Statutes § 12-62 is entitled "Revaluation of real property" and provides in relevant part: "(b) (1) (A) Commencing October 1, 2006, and until September 30, 2023, each town shall implement a revaluation not later than the first day of October that follows, by five years, the October first assessment date on which the town's previous revaluation became effective . . . ." Section 12-62 (b) (2) further provides in relevant part: "When conducting a revaluation, an assessor shall use generally accepted mass appraisal methods which may include, but need not be limited to, the market sales comparison approach to value, the cost approach to value and the income approach to value. Prior to the completion of each revaluation, the assessor shall conduct a field review. . . ." Moreover, General Statutes § 12-63, which is part of the property tax assessment scheme, governs the rule of valuation and provides in relevant part: "(a) The present true and actual value of land classified as farm land pursuant to section 12-107c . . . shall be based upon its current use without regard to neighborhood land use . . . ."

When the foregoing provisions are read together, it is clear that the declassification of property previously classified as farmland occurs in two alternative ways. First, when the use of such land is changed; or second, when the property is sold by the record owner. See General Statutes § 12-504h. The fact that an assessor

forest land. Our Supreme Court held that, under the tax assessment scheme for forest land, pursuant to § 12-107d, "the state forester is the only official to whom authority is expressly granted to determine whether property qualifies as forest land." *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem*, supra, 269 Conn. 141. Therefore, for the purposes of § 12-504h, property previously classified as forest land cannot be deemed to have changed its use until the state forester determines the land no longer qualifies as forest land. Under § 12-107c, the classification statute for farmland, it is only the tax assessor that makes that determination.

makes no actual change in the classification of a property previously classified as farmland for many years after the occurrence of one of the triggering events in § 12-504h is irrelevant. An assessor, during a townwide revaluation pursuant to § 12-62, must determine the true and actual value of the land based upon its current use. In doing so, an assessor must conduct a field review to determine the current use of the property. In determining whether a property is currently being used as a farm, an assessor, pursuant to § 12-107c, "shall take into account, among other things, the acreage of such land, the portion thereof in actual use for farming or agricultural operation, the productivity of such land, the gross income derived therefrom, the nature and value of the equipment used in connection therewith, and the extent to which the tracts comprising such land are contiguous." General Statutes § 12-107c (a).

In the present case, the assessor was required to conduct a townwide revaluation of all the properties for the October 1, 2020 grand list. During the course of his townwide revaluation, the assessor conducted a field review of the plaintiff's excess property, determined that it was not in actual use as farmland and declassified it. On appeal to the Superior Court, the court concluded that, on the basis of the factors set forth in § 12-107c, the plaintiff's excess property was not being used as a farm and affirmed the assessor's determination. We conclude that the court properly relied on the factors set forth in § 12-107c when it determined that the plaintiff's excess property was not currently being used as a farm.

## III

Finally, the plaintiff claims that the court erred in determining that the plaintiff had changed the use of the excess property so as to have lost the entitlement to the farmland designation previously granted to him

by the assessor. Specifically, the plaintiff argues that there was no evidence in the record to support a finding that he had begun to use his excess property as something other than a farm. We are not persuaded.

As we have previously stated in this opinion, we review the court's factual determinations in a tax appeal pursuant to the clearly erroneous standard. See *Digital 60 & 80 Merritt, LLC* v. *Board of Assessment Appeals*, supra, 211 Conn. App. 577. "[W]e do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Citation omitted; internal quotation marks omitted.) Id.

In the present case, the court concluded that "it would be in direct conflict with the statutory scheme to retain a farmland classification on land that no longer qualifies as such and then assess it based on its non-farm current use." (Internal quotation marks omitted.) In making this determination, the court relied on the assessor's examination of the plaintiff's excess property. At trial, the assessor testified that he took into account the factors set forth in § 12-107c (a). In its memorandum of decision, the court noted that the assessor looked at "the acreage of the land, the portion of the land in actual use for farming or agricultural operations, the productivity of the land or lack thereof, the gross income derived therefrom, or losses, as here,

and the nature and value of the equipment, or lack thereof, used in connection therewith." As we concluded in part II of this opinion, the court properly considered the § 12-107c (a) factors in determining whether there had been a change in use of the plaintiff's excess property.

Our careful review of the record reveals that there is sufficient evidence in the record to support the court's determination that there was in fact a change in the current use of the plaintiff's excess property. During the September 12, 2022 trial, the plaintiff testified that his prior use of the excess property consisted of raising multiple species and breeds of livestock and animals. Specifically, the plaintiff stated that he previously had raised pigs, goats, rabbits, sheep, and steer on the excess property. As to his current use of the excess property, the plaintiff testified that he now uses it to breed sheep and sell the lambs. The plaintiff also testified, however, that during the 2020 townwide revaluation, he only had four female sheep on the excess property and did not own any male sheep. The plaintiff further testified that, in contrast with his past practice, he no longer had any farming equipment, such as a tractor or lifting equipment, on the excess property. The assessor testified that the last time he was on the plaintiff's excess property was during the 2015 townwide revaluation, and thereafter he would drive by the plaintiff's premises and observe some of the activities taking place on his excess property. The assessor further testified that he had not seen any farming activity on the excess property and had seen sheep on the plaintiff's excess property on only one occasion, when he observed a few sheep run out of the plaintiff's barn.

On the basis of our careful review of the record, we conclude that there is ample evidence in it to support the court's determination that the current use of the plaintiff's excess property did not constitute farm use.

Accordingly, the court's finding concerning the current use of the excess property was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.